Plaintiff is the husband of Mrs. Bessie D. McHenry between whom the regime of the community of acquets and gains exists. He was seriously and painfully injured the morning of June 28, 1941, when struck and knocked down by the family automobile that was being backed by Mrs. McHenry from the yard into the street adjacent to their home. At the time of the accident and for several years prior, Mrs. McHenry was employed by the Welcome Wagon Service Company as hostess. The car was daily used by her in the discharge of the duties of her employment.
When the accident occurred there was in force a policy of public liability insurance covering said car, issued by the defendant, American Employers' Insurance Company, wherein the Welcome Wagon Service Company and Mrs. McHenry are named as "insured". The policy contains the following obligation on behalf of the insurer, to-wit: "To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile."
Plaintiff instituted this suit against the insurer to recover various elements of damages sustained by him, being the results of the accident which he accredits solely to his wife's negligence and carelessness. He alleges that at the moment of the accident Mrs. McHenry was acting within the scope of her employment and had begun a mission in the interest of her employer. He reserved the right to hereafter sue the employer. The acts of negligence and carelessness, inter alia, charged to the wife, allegedly causing the accident and consequent damages, summarized, are these:
That she gave no signal of her intention to back the car into the street and did not keep a proper lookout to the rear while so doing, to the end that she might not collide with or injure those lawfully using the sidewalk and driveway; nor did she exercise that degree of caution required of an ordinarily careful and prudent driver under the circumstances; that she did not grip the steering wheel firmly and securely so as to maintain proper control of the car and prevent the wheel from slipping in her hands while backing it into a public street. Other acts of negligence are alleged but these need not be given nor passed upon in view of the conclusions we have reached on some of those above set forth.
Exceptions to the petition as disclosing neither a cause nor a right of action were filed but overruled.
Defendant resists the suit on various grounds. Firstly, it is denied that plaintiff was injured through the negligence or carelessness of his wife in the handling and operation of the car, but, on the contrary, he was struck by the car and injured solely and proximately by his own negligence and carelessness in assuming a position of danger; in placing himself in the path of the moving automobile; in failing to look out for his own safety; in failing to remove himself from the path of said automobile and otherwise failing to take the necessary steps for his own safety.
In the alternative, employing the above named acts of negligence and carelessness as a basis, liability is denied by defendant on the further ground that plaintiff contributed to the accident in such way and manner as to preclude recovery by him. Further, in the alternative, liability is denied on the alleged grounds that not only was the automobile owned by the community of acquets and gains existing between the McHenrys, but that Mrs. McHenry at plaintiff's request and direction was engaged at the time of the accident in taking him to his work, and "* * * accordingly was engaged solely on a community mission and business, and was, therefore, the agent, servant and employee of said community engaged in the source and within the scope of her duties, obligations and instructions. Defendant, therefore, pleads that any and all acts of petitioner's said wife on the aforesaid occasion were the acts of, and things done for and on behalf of, the said community and petitioner, for which the said community and petitioner were and are legally responsible, and accordingly there can be no *Page 842 
recovery herein on the part of petitioner or the said community."
Lastly, in the alternative, it is alleged that when the accident occurred plaintiff and his wife were engaged in a joint venture as community business, and were exercising equal control of the car; that the wife's negligence, if any, is imputable to the plaintiff and precludes recovery by him.
All of the defenses urged were rejected by the trial judge and judgment went for plaintiff in the sum of $7,482.24, from which the defendants appealed. Appellee, by answer to the appeal, prays for increase in the amount of judgment to $10,000.
 Exceptions of No Cause and No Right of Action.
These exceptions are predicated upon the following proposition of law, to-wit:
That it is contrary to public policy and good morals to allow the husband to recover from his wife's insurer damages resulting from her own negligence inasmuch as she would thereby profit or benefit to the extent of one-half of the amount recovered.
This question was determinable from the petition and attached policy of insurance. It has not heretofore been passed upon by the Supreme Court or either of the Courts of Appeal of this state. Because of this, and the importance of having the Supreme Court's advice thereon, we certified the question to that court and asked for instructions. The Supreme Court held that the plaintiff's suit was well founded; that the wife would not in reality profit from judgment favorable to plaintiff. See18 So.2d 656. Therefore, the question propounded by the exceptions is now settled beyond debate.
Plaintiff and his wife reside on Bres Avenue in the City of Monroe, Louisiana. Their garage faces said avenue and is 52.7 feet therefrom. To reach the garage from the street one has to first pass over a concrete driveway 14.5 feet wide, then a 4 foot sidewalk, and lastly an asphalt surfaced driveway 34.3 feet long that ends at the garage door. The concrete driveway begins at the street gutter and has a rise of 1 1/2 feet.
A few minutes prior to the accident plaintiff got in the car in the garage and attempted to start it with the self-starter, but the carbureter flooded, causing the motor not to function. With the assistance of the yard boy the car was pushed from the garage, its front end resting some 2 feet therefrom. Plaintiff left the car and walked to his residence and then on toward the street. About this time Mrs. McHenry and her mother, Mrs. Dunning, came out of the house and got in the car. Mrs. McHenry took the wheel and endeavored to start the motor but again it refused to function. She then called the yard boy and directed him to give the car a push from its front end. It was put in reverse gear and the clutch disengaged. The car responded to the boy's pushing and began to roll along the level driveway toward the street. It had proceeded several feet when Mrs. McHenry engaged the clutch and the motor suddenly started. The exact position of the car at this juncture is a little uncertain, but Mrs. McHenry says the rear wheels were then on the declining concrete driveway; that it was then the car jumped backward, the front wheels cut to the left and the right front end of the car cut to the right, striking the plaintiff. In view of other established facts and circumstances we are disposed to accept her version of the matter.
While backing the car Mrs. McHenry looked to the rear through the open panel of the door at her left. She paid no attention to conditions on the right side of the car, admitting that she made no use of the rear view mirror. Therefore, she did not see her husband or know of his exact position from the time the car began to move backward until after he was struck. She testified, and her mother and other witnesses corroborate her, that when the motor started suddenly and the car executed the jumping or jerking movement and the front wheel suddenly turned to the left, the steering wheel also turned quickly, causing her to lose grip thereon and consequent momentary loss of control of the car.
Plaintiff, according to the virtually uncontradicted testimony, was standing on the western one-half of the concrete driveway, 3 or 4 feet from the construction joint that divides it into two sections, and was about 6 feet from the higher or south side of the driveway. He was knocked approximately 20 feet to the middle of Bres Avenue.
Plaintiff, when struck, was facing east, observing the car as it backed toward the street; and was well west of its proper path of travel, or, in other words, in a place of safety and free of danger of injury *Page 843 
from the car if operated carefully and prudently. The fact that plaintiff did not sound the horn prior to or while backing the car is immaterial since plaintiff knew the car was moving toward the street.
The fact that the greater portion of the car passed plaintiff before it struck him proves that he was not in its path of travel. It also proves that some movement of the car was suddenly made after its rear end had passed plaintiff, that threw its right front portion west of its proper path of travel so far as to contact him. It is certain this all happened so suddenly and so quickly that plaintiff did not have the time to avert the accident by shifting his position.
Plaintiff intended boarding the car as soon as it stopped after gaining the street. He knew his wife was driving it, and further, knowing her to be a competent operator of cars, he had the right, as he doubtless did, to rely upon her handling it in a careful and prudent manner. Had she done this the accident would not have happened. Having had many years' experience in operating cars and having had this sort of trouble with the car previously when backing from the garage, Mrs. McHenry must be held to have known that when she engaged the clutch and the motor started, going down grade, unusual care and attention on her part were required to the end that she maintain complete control of it. Her failure to guard against what did happen, it being a foreseeable happening, in view of all the facts and circumstances, amounts to negligence and was the sole cause of the accident. This to us appears so clearly that citation of authorities to support the conclusion would seem superfluous.
Appellant's earnest counsel seriously urge the plea of contributory negligence. We find no merit in the plea. In addition to what we have heretofore said that bears on the subject, we will add that as we see the case plaintiff was simply standing on his own driveway awaiting the approach of the car in which his wife was, inter alia, going to take him to his work, as she had often done. He had the unquestioned right to be where he was when hurt. He was hurt, not primarily because of being there, but because the car was allowed suddenly to encroach upon his side of the driveway under circumstances and conditions for which he was in no manner responsible.
The testimony establishes that the car was a community asset and was used almost exclusively by Mrs. McHenry in the discharge of her duties to her employer. The trip which had begun when the accident occurred had a three-fold object. Mrs. McHenry intended firstly to stop at a fruit stand not far from her home to make purchases, presumably for the household; from whence she intended to drive a mile or more to attend to duties due her employer (this being the primary purpose of the trip), and when this had been concluded, she intended driving her husband to the scene of his prospective employment, approximately 1 1/2 miles farther south. There can be no doubt that the income of both the husband and wife fell into the community between them. It is, therefore, equally certain that the trip just initiated when the accident occurred was a community mission. The remuneration therefrom, had there been any, would have become a community asset.
It is urged, and correctly so, that under the jurisprudence of this state, plaintiff, as head and master of the community, would have been responsible to any third person sustaining injury and damage from the negligence of the wife while the car was being used as aforesaid. And, it is further urged that because the plaintiff, under the terms of the policy, was protected against loss in such case, he himself, was an insured thereunder. This is true, but it is not impossible legally for one to be protected from loss under an accident policy and at the same time under appropriate facts be a beneficiary thereunder. The present case well illustrates such.
The Supreme Court has held that plaintiff may recover from his wife's insurer the damages sustained by him from her negligence. In view of this holding we cannot perceive any sound reason why he should be barred from recovery because, as head and master of the community, he could have been held to respond in damages to a third person injured by his wife. It certainly is not consistent to say that coverture in this case does not forbid the husband to recover from the wife's insurer and then say he may not recover because the wife was performing a service for the benefit of the community, a legal result of coverture, when the accident happened.
As Mrs. McHenry was acting within the scope of her employment and had *Page 844 
begun a mission for her employer, the employer under the respondeat superior doctrine could be held responsible for the damages resulting from her negligence. The employer is bound in solido with the insurer for such damages. Plaintiff elected to sue the insurer alone as he had a right to do under Act 55 of 1930, but he reserved his right against the employer, one of the insured.
The obligation of the insurer, under the above quoted provision of the policy, is absolute and unconditional. Each insured is protected against payment of damages imposed by law resulting from the ownership, maintenance and use of the car. To hold that this broad provision excludes the husband of one of the insured, under any circumstances, would be reading an exception into this provision that the parties themselves did not choose to incorporate therein.
The plaintiff's right to hold the wife's employer for damages arises from the general law of tort. His right to hold the insurer for damages flows from contract to which he is not a party. The employer could not well escape liability to plaintiff if sued by him. It has elected to protect itself against such a contingency by procuring insurance. It would be unthinkable to allow plaintiff to recover against the employer under the law of agency, but reject his suit against the insurer on the same cause of action simply because the agent was his wife and the injury occurred while she was rendering a service beneficial to the community. The law, we believe, does not sanction that such be done. The insurer will be required to abide by its contract and not be allowed to escape responsibility under such facts and circumstances.
The defense of joint venture is not supported by the facts. As said before, the primary purpose of the wife's mission was to perform a duty to her employer. She would have used the car for this purpose the morning of the accident, regardless of all other considerations. The contemplated diversion trips by the fruit stand and delivery of plaintiff to the site of his prospective employment were of secondary importance and merely immaterial incidents of the trip. As plaintiff was not in the car when injured, but waiting to get in, surely it cannot be said that he was exercising joint control thereof with the wife. She was then and evidently intended to continue in supreme command of the car. Her negligence is not, under these circumstances, imputable to plaintiff.
Defendant does not complain of the amount of the judgment. This amount does not appear inadequate. The character of injuries sustained by plaintiff and their effects, as found by the trial judge, are as follows: "As a result of said accident, he suffered severe pains and injuries, which principally consisted of an irregular fracture through the base of the neck of the right femur with complete severance and upward misplacement of the lessor trochanter; a cut on the forehead, with a long gash over the right eyebrow, cuts and general bruises, contusions and lacerations. As a result of these injuries, he was confined in St. Francis Sanitarium for about three weeks, and had to remain in bed at home for about six weeks. Due to these injuries to his right hip, it was necessary that two operations be performed, the last for the removal of a Smith Petterson Nail. Plaintiff testified that he suffered considerable pain, and was still suffering pain at the time of the trial of this case. It also was testified by medical experts that his right leg was shortened about 7/8 to one inch, as a result of said injury, and that he was unable to walk without assistance of a cane. Competent medical testimony established that he suffered a 75% disability. He, at the time of the accident, was 69 years of age."
We have been favored in this case with lengthy written reasons of the trial judge for judgment that have been of material assistance in considering and passing upon the various issues involved.
For the reasons herein assigned, the judgment is affirmed. *Page 845