SANI–SYSTEM, INC., AND PAUL D. PALTING, Appellants

v.

CAPITAL INSURANCE & SURETY COMPANY, INC., Appellee

Civil No. 51-A

District Court of Guam

Appellate Division

February 9, 1967

Counsel for Appellants: DAVID M. SHAPIRO
Counsel for Appellee: BARRETT, FERENZ & TRAPP

Before SHRIVER, *Judge*, District Court of Guam; FURBER, *Chief Justice*, High Court of the Trust Territory of the Pacific Islands and PEREZ, *Chief Judge*, Island Court of Guam

SHRIVER, *District Judge*

### OPINION

The unserved defendant, Judith V. Edge, insured by Capital, left her car with motor running and without set-

ting the brakes. The car either went into gear or otherwise was set in motion and struck a building, damaging it in the amount of $1,160.00. There is no serious question as to the negligence or damage. Capital defended both on the merits and on its contention that the insured had failed to notify the company of the accident or assist the company. It can be assumed that she left Guam shortly after the accident and that her present whereabouts are unknown to Capital.

The trial court was of the view that opinions of the Court of Appeals for the Ninth Circuit have construed Guam legislation to mean that the injured person cannot recover from an insurance company if the company has a defense against the insured under the policy for failure of the insured to comply with conditions subsequent in the policy. We reverse and direct that judgment be entered for the appellants in the amount of $1,160.00, plus costs and interest at 6% per annum from September 21, 1966 when the judgment of dismissal was entered.

The amount involved here is small but the principle involved is of the utmost importance. To sustain the trial court we would be required to hold that neither the Direct Action Statute nor the Financial Responsibility Law of Guam gives the injured person any rights against an insurance company if the insured has failed to comply with policy conditions after the accident which require notification, availability to assist, either or both. The trial court was of the view that this conclusion was required by *Sumait v. Capital Fire and Casualty Company*, 296 F.2d 108 (9th Cir. 1961), and *Capital Insurance and Surety Company, Inc. v. Kelly*, 361 F.2d 567 (9th Cir. 1966).

In *Sumait* the court simply held that an injured plaintiff under the terms of the policy in effect at the time of the accident could not recover against the company without bringing himself within the terms of the policy. Condition 7

169

of the policy provided that recovery could not be had against the company until the liability of the insured had been determined by judgment or agreement. The Direct Action Statute was not in effect at the time of the accident. *Kelly* involved a case in which the insured was killed in the accident. The appellate court reversed the holding of the district court that the action did not abate against the insurance company even if it abated against the deceased tortfeasor. But Judge Ely, in *Kelly*, made it clear that the opinion went no further than to hold that under Guam law a defense available to the insured was available to the company, that if by death no action existed against the insured there could be no liability on the part of the company. This situation has now been corrected in Guam by permitting survival of actions. Judge Ely said, p. 569

There was a strongly valid reason for Guam's action in authorizing a direct proceeding against the insurer of an automobile operating upon Guam's roadways. It is well known that the population of the Territory, military personnel and others, has been unusually transient in its nature. Obviously, it was believed that an insurer of an automobile should not escape a just obligation because of the removal of its insured from the Territory and the consequent difficulty or impossibility of subjecting the insured himself to the jurisdiction, in personam, of the courts of Guam. It is hardly to be questioned, however, that the legislature contemplated that an insurer, sued in a direct action, might encounter no insurmountable obstacle in presenting its insured's testimony, either in deposition form or by production of the witness personally.

In analyzing the case at hand, different considerations of policy are apparent. An alleged tortfeasor who is deceased may have been the only witness to events which might fairly exculpate him from legal responsibility. The rule that a tort action against him abates with his death was predicated upon the belief that public policy would be best served by avoiding the possibility that heirs suffer injustice because death foreclosed the opportunity for successful defense.

In this case, we cannot undertake to weigh conflicting considerations of public policy. We are not properly empowered to supply additions to an insurance contract, and we cannot enlarge statutory

170

provisions and extend them beyond the limit of such legislative objectives as may reasonably be inferred from the provisions themselves.

 Section 43354 of the Government Code of Guam provides for direct action against the insurer which may be brought against the insurer alone or against both the insured and insurer "within the terms and limits of the policy." It can be assumed that this statute, standing alone, simply places the injured person in the shoes of the insured as regards the liability of the insurer. The cause of action against the insurer exists at once. If at the time of the accident the insurer has a valid defense against its insured that defense is valid against the injured plaintiff within the terms and limits of the policy. The opinion in Kelly infers that it is the responsibility of the insurer to obtain the testimony of its insured when and if the insured has left the jurisdiction. The court opinions on the question of breach of conditions subsequent in the policy have been the subject of much dispute. 7 Am.Jur.2d, p. 574, Sec. 225, states the general rule to be that such breach by the insured is a defense against the injured but, at p. 576

The general rule stated above is not followed in all jurisdictions, however. In a few, a different rule is applied, which may be attributable to the nature of the statutes in such jurisdictions. Thus, it has been held that where the public policy, expressed by the legislature through various statutes, is to protect the interests of injured third persons with respect to enforcing their claims against an automobile liability insurance carrier, the insurer is not relieved of liability where the interest of an injured third party intervenes before an insured's breach of a liability policy condition, unless the breach is material. Also, some courts take the view that the failure of the insured to give notice of an accident and of the pendency of an action against him by the injured person as provided for by the insurance policy does not prevent such injured person from bringing an action against the insurer.

§ 226. —Policies issued pursuant to compulsory insurance or financial responsibility statutes.

171

In the case of automobile liability policies issued pursuant to and in compliance with compulsory insurance or financial responsibility statutes, the rule followed generally, for the reason that such statutes are for the benefit of members of the public and not of the insured, is that the injured person is not subject to defenses arising out of the breach of conditions subsequent to the action even though they would be available to the insurer as against the insured. Thus, failure to give notice of the accident does not constitute a defense to an action by an injured party to recover from the insurer, and this principle has also been applied or recognized in a number of cases where the statutory compulsion related only to taxicab or passenger bus owners, or other motor carriers, or to those engaged in the car rental business.

Also, in accordance with the general rule, lack of cooperation on the part of the insured has been held not to constitute a defense to an action by an injured member of the public to recover from the insurer. Furthermore, a statute may specifically provide that lack of cooperation by the insured shall not operate to defeat the right of recovery from the insurer by the injured person, and such a provision has been held valid. However, where the particular accident or injured person was not within the intended coverage of the compulsory insurance statute, lack of cooperation on the part of the insured has been held to be available as a defense to the compulsory insurer.

The Direct Action Statute is part of the Insurance Code of Guam but the Financial Responsibility Law of Guam is part of the Motor Vehicle Code and its provisions are clearly intended for the protection of third persons. This law, Section 23525, et seq., of the Government Code requires the person who has driven a motor vehicle involved in an accident to report it to the Department of Finance. The report is confidential except as to certain information including insurance. If the driver has insurance in the prescribed amounts he is exempted from posting security as a condition precedent to his continued driving. Such insurance must be in a company authorized to write insurance in Guam and upon receipt of the notice of the accident from the Department the insurer must report as to whether the

policy was in effect at the time of the accident. The failure to report the accident by the driver is a misdemeanor.

This comprehensive scheme, short of compulsory insurance, falls down when the driver fails to report the accident. In the case before us it is not questioned that the insurance was in existence and that if the insured had reported the accident as required the insurer, upon inquiry, would have reported coverage. The system becomes meaningless if, after reporting coverage, the insurer could rely on lack of notice or failure to cooperate as a defense against the injured third party. The existence of insurance protects the driver against having his license to drive suspended. In these circumstances is the insurer prejudiced by the failure of the insured to report the accident either to the insurer or the government? As the Court pointed out in *Kelly*, the insurer can obtain the testimony of the insured for any defense on the merits. The injured person, on the contrary, for whose benefit the law exists, has no local recourse against the insured who has left the jurisdiction. The insurer can choose its insurance risks but the victim cannot choose by whom he would be injured. In *Royal Indemnity Co. v. Olmstead*, 193 F.2d 451 (9th Cir. 1951), the court pointed out that as a general rule, unless a policy could be construed as creating an independent right of action in the injured person, his right to recover is subject to any defenses the company might have against the insured. But that an exception exists where the insurance policy was issued to satisfy the requirements of a statute having as its purpose the protection of the public. Olmstead involved compulsory insurance and the court held that the defense of lack of notice or other technical defenses "under the policy relating to conditions wholly outside the ability of the injured person to secure performance of" were not available to the insurer. The general law appears to support this view as to financial responsibility laws as well as

173

compulsory insurance laws, 7 Am.Jur.2d p. 576, Sec. 226, supra.

Assuming that the policy involved here was issued pursuant to the Guam Financial Responsibility Law we must determine whether defenses of lack of notice or failure to cooperate are available to the insurer. In a Guam case it was stated *Gumataotao v. Government of Guam*, 322 F.2d 580 (9th Cir. 1963)

It is well settled that, in recognition of the fact that local needs, customs and legal systems may differ from those with which we are more familiar, decisions of local courts of United States territories on matters of purely local law will not be reversed unless clear and manifest error is shown. *De Castro v. Board of Com'rs of San Juan*, 322 U.S. 451 (1944) ; *Bonet v. Texas Co. (P.R.), Inc.*, 308 U.S. 463 (1940) ; *Advertiser Publishing Company v. Fase*, 279 F.2d 636 (9 Cir. 1960) ; *Lord v. Territory of Hawaii*, 79 F.2d 761 (9 Cir. 1935). In the *Bonet* case the Supreme Court at page 471 states, "[T]o justify reversal in such cases, the error must be clear or manifest; the interpretation must be inescapably wrong; the decision must be patently erroneous."

There is another factor in Guam, possibly a controlling factor. This was not discussed in the briefs or in oral argument but in practice there is de facto compulsory insurance in Guam which involves a high percentage if not most of the private automobiles. Guam has many military installations and many closed military bases (bases with guarded entrances). The uniform requirement by military commands is that no private vehicle, whether owned by a civilian or a member of the armed services, may enter the base without a showing of the minimum insurance coverage provided for by the Guam Financial Responsibility Law. This is absolute as regards those who are issued decals to be placed on the windshield but may be modified for a visitor. When it is considered that commercial planes land on the closed base of the Naval Air Station and that there are few local car owners who do not have occasion to

enter such bases at some time during the year, the practical necessity for insurance becomes apparent. Those who live on base must have insurance; those who live off base but are employed on base, including large numbers of Guamanians, must have insurance; others, such as the writer of this opinion, who go on base for social or business reasons at regular intervals must demonstrate the existence of insurance before being given a windshield permit good for a year.

Reversed and remanded to the Island Court for entry of judgment for the appellants, against Capital, Capital to pay all costs.